IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUNIOR WILLIAMS,

    Plaintiff,

v.

DALY CITY POLICE OFFICERS
C. AUSTRIA and M. PRICE,

    Defendants.

No. C 02-02745 JSW

**ORDER DENYING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**

    Now before the Court is the second motion of defendants Daly City Police Officers C. Austria and M. Price (collectively, "Defendants") for summary judgment based on qualified immunity. Defendants also move to strike the late-filed declaration of Plaintiff's proposed police practices expert, Frank Saunders. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby DENIES Defendants' motion for summary judgment on the ground that Defendants are not entitled to qualified immunity as a matter of law and DENIES Defendants' motion to strike and reopens discovery for a period of 20 days for the single and limited purpose of affording Defendants an opportunity to depose Mr. Saunders.

## BACKGROUND

    The parties are familiar with the facts in this case. The matter arises from a bicycle stop on Geneva Avenue in Daly City, California on November 10, 2001 shortly before two a.m. Defendant police officer Austria stopped Plaintiff Junior Williams because his bicycle was not

equipped with a front headlamp. During the stop and after a brief search, the police officer found drug paraphernalia and crack cocaine in Plaintiff's shirt breast pocket. Officer Austria called for back up and as Defendant Officer Price responded to the scene and observed Officer Austria speaking with the Plaintiff, Plaintiff began to run away. Both defendant officers ran after him for approximately four blocks before subduing Plaintiff. While prone, Plaintiff resisted placing his arms behind his back in order to be handcuffed. In their attempt to subdue him, the police officers struggled physically with Plaintiff and allegedly struck him repeatedly in the head and groin. Both officers instructed Plaintiff to stop resisting, but Plaintiff did not comply. The officers testified that in order to gain control over Plaintiff, Officer Austria delivered two to three distraction blows to one side of Plaintiff's head and Officer Price delivered three distraction blows to the other side. Plaintiff testified that he recalled being hit in the head five to six times. Plaintiff also testified that he was kicked a number of times in the head as well as in the stomach and groin areas. (Williams Depo. 33-38.)

Defendants contend that the officers are entitled to qualified immunity because, given the totality of the circumstances, the use of distraction blows was objectively reasonable. Plaintiff contends that, drawing all inferences in a light most favorable to him at this stage, the officers' use of violence, both by punches to the head and repeated kicks to the head and groin, constitutes objectively unreasonable or excessive use of force, thereby making the assertion of the defense of qualified immunity inappropriate at summary judgment.

## ANALYSIS

**A.     Legal Standard.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the

evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* As a result, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). The Court, therefore, is required to rule upon the qualified immunity issue as a threshold question, and may make such a determination at summary judgment. *See id.* The Court must consider the questions, taken in the light most favorable to the party asserting the injury, whether the facts alleged demonstrate that the officers' conduct violated a constitutional right. *See id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If the Court finds that there is a constitutional violation, the next inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his conduct did not violate a clearly established constitutional right. *Saucier*, 533 U.S. at 201-05.

**B.    Defense of Qualified Immunity.**

There is no significant change in law since this Court's previous order denying summary judgment on the basis of qualified immunity. A law enforcement officer is entitled to qualified

3

immunity in a civil rights action if the district court determines that, in light of clearly established principles governing the conduct in question at the time of the challenged conduct, the officer could reasonably have believed that the conduct was lawful. *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citing *Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)). This determination requires a two-step analysis. First, the Court must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred. *Id.* The second step requires that the Court address the question whether, under that clearly established law, a reasonable officer would have believed the conduct to be unlawful. *Id.* This is the test of the objective reasonableness of the defendant's actions.

### 1. Clearly Established Law.

For qualified immunity purposes, a right must be clearly established, that is, "the contours of the right must be sufficiently clear that [at the time of the alleged unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This does not mean that any official action is protected by qualified immunity 'unless the very action in question has previously been held unlawful,' but it does not require that 'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.*

Here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, and so is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Id.* at 395 n.10 (citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). It is clearly established that the use of excessive force by police officers in an arrest violates the

arrestee's Fourth Amendment right to be free from unreasonable seizure. *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986).[1]

### 2. Objective Reasonableness.

If the law governing an official's conduct is clearly established, qualified immunity is available only if a reasonable official would have believed that the conduct at issue was lawful under that clearly established law. *Mendoza*, 27 F.3d at 1362 (citing *Hallstrom*, 991 F.2d at 1482). The reasonableness of the particular use of force must be judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396. The reasonableness inquiry is objective, however, asking "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The Court must consider whether the "'totality of the circumstances' justifies the force used, examining particularly severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The reasonableness of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. at 20-22). When determining whether the amount of force used was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Johnson v. County of Los Angeles*, 340 F.3d 787, 792 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 396).

The facts, as alleged in the complaint, indicate that in the process of trying to subdue Plaintiff in order to handcuff him, Officer Price struck Plaintiff in the head approximately three times with his fist while Plaintiff was lying on the ground. Also, the facts as alleged indicate

---

[1] Defendants contend that because there may have been probable cause to arrest Plaintiff, neither officer should be held liable for unlawful search or seizure. However, this line of argument fails to address the claims now pending against the officers for excessive force while attempting to place Plaintiff under arrest. The issue before this Court is not whether the officers had probable cause to arrest Plaintiff and subject him to a preliminary frisk search, but rather whether, in the course of effecting that arrest, Plaintiff's constitutional rights were violated under the reasonableness standard of the Fourth Amendment.

5

1  that Officer Austria struck Plaintiff in the head approximately two to three times with his fist,
2  and may have kicked Plaintiff in the head approximately three times and kicked him in the groin
3  area twice. (*See* Complt. at ¶¶11-15; Challa Decl., Ex. F (Williams Depo. at 33-38).) Plaintiff
4  alleges that the officers then dragged him to the patrol car while handcuffed. (*See* Complt. at ¶¶
5  14-15; Challa Decl., Ex. F (Williams Depo. at 41).) As a result, Plaintiff alleges that he has
6  suffered constant headaches, blurred vision, temporary memory loss, mental anguish and back
7  pain. (*See* Complt. at ¶ 16; Challa Decl., Exs. F (Williams Depo. at 35-36), K, L.)

8      The officers allege that, upon finding drugs and drug paraphernalia in Plaintiff's jacket,
9  Plaintiff immediately ran away from the officers who were then forced to chase him down for
10 approximately four blocks. The officers further contend that Plaintiff struggled with them
11 during the arrest and resisted putting his hands behind his back in order to be handcuffed.
12 Defendants do not contest that Officer Austria struck Plaintiff in the head twice and Officer
13 Price struck Plaintiff three times in the head, using a technique called distraction blows in order
14 to subdue the arrestee. Defendants contest the veracity of the allegation that Defendant Austria
15 also kicked Plaintiff in the head three times or in the groin area twice. However, at summary
16 judgment, the Court may not weigh the evidence or make credibility determinations, and is
17 required to draw all inferences in a light most favorable to the non-moving party. *See Freeman*,
18 125 F.3d at 735. The Court, required to rule upon the qualified immunity question, must
19 consider whether, taken in the light most favorable to the party asserting the injury, the facts
20 show that the officer's conduct violated a constitutional right. *See Saucier*, 533 U.S. at 201
21 (citing *Siegert*, 500 U.S. at 232).

22     In this matter, although he was clearly trying to evade arrest by flight, it is not clear that,
23 examining the severity of the crime at issue, Plaintiff posed an immediate threat to the safety of
24 others or of the officers. Plaintiff has stated that he was prone, lying face down on the ground
25 while resisting arrest. Plaintiff has alleged in his complaint and has now testified that he was
26 kicked three times in the head and twice in the groin by Officer Austria. Defendants contested
27 the allegation upon submitted declarations in their previous motion for summary judgment.
28 During this round of briefing, Defendant Officer Austria provided a declaration which states

6

only that he indeed delivered three distraction blows to Plaintiff's head in an effort to "cause pain in order to divert the suspect's attention so that an officer may gain compliance." (Declaration of Officer Christopher Austria, ¶¶ 18, 19.)  At the first round of summary judgment briefing, Defendants submitted a police training manual from the City of Oakland outlining the acceptable amount of physical force utilized by police officers.  The manual indicates that a distraction blow to the head is a commonly-used tool to subdue resisting arrestees.  (*See* Declaration of Louise Leon Guerrero, Exh. A [Docket No. 24]; *see also* Opposition, Ex. H.) The Court found that the training manual explicitly sets forth the acceptable use of the officer's foot (stating that the officer may use his feet to strike blows to the lower leg) and also sets out that for the purposes of distraction, the officer may "poke the groin with the tip of the thumb," but should not strike the genitals.  (*See id.* at 19-20, 24.)  Because the conduct, as alleged by Plaintiff in his complaint and as testified to in his deposition, falls outside of the officers' training and because the Court is simply not in the position to weigh the evidence or make credibility determinations at summary judgment, the Court cannot determine on the record before it that the officers' conduct, as alleged, was objectively reasonable under the totality of the circumstances.  Accordingly, the assertion of the defense of qualified immunity remains inappropriate in this case at summary judgment.

C.      **California State Law Immunity.**

State law immunity covers same territory as analysis under Fourth Amendment. *Scruggs* and *Robinson* cases.  No discretionary immunity under California law for unreasonable use of force in effecting an arrest.

D.      **Monell Claim Against Individual Officers in Their Official Capacity.**

Defendants contend that Plaintiff may not pursue his second cause of action against the individual officers under the theory that the officers' actions are representative of a repeated course of conduct.  However, official capacity suits provide "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978).  If the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.

7

*Kentucky v. Graham,* 473 U.S. 159, 165 n.14 (1985). As Plaintiff was permitted to amend his complaint to add the claims against the officers in their official capacities, he is entitled to pursue his second cause of action.

### E. Motion to Strike.

Defendants move to strike Plaintiff's designated police practices expert, Frank Saunders, because Plaintiff disclosed him one week after the deadline for expert disclosures, and on the same day set by this Court as the close of expert discovery. The Court exercises its discretion to remedy any potential prejudice to Defendants by reopening discovery for the single and limited purpose of permitting Defendants an opportunity to depose Mr. Saunders. Defendants may have until April 7, 2006 to depose Mr. Saunders. As a sanction for Plaintiff's counsel's disregard of this Court's discovery deadlines, the Court sanctions counsel in the amount of one-half of the Mr. Saunders' fees for the deposition, not to exceed $500, payable to Defendants by no later than April 7, 2006.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment and DENIES Defendants' motion to strike Plaintiff's proposed expert, Frank Saunders. Plaintiff's counsel is ORDERED to pay sanctions in the amount of one-half of the Mr. Saunders' fees for the deposition, not to exceed $500. The Court FURTHER ORDERS that: (1) discovery is reopened for a period of 20 days from the date of this Order for the single and limited purpose of affording Defendants an opportunity to depose Mr. Saunders; (2) the pretrial conference is CONTINUED from May 8, 2006 to May 22, 2006 at 2:00 p.m.; and (3) the trial is CONTINUED from May 30, 2006 to June 19, 2006 at 8:30 a.m.

**IT IS SO ORDERED.**

Dated: March 14, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE